WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| George Robert Pettit,<br><br>  Plaintiff,<br><br>vs.<br><br>Arizona Board of Regents, et al.,<br><br>  Defendants. | No. cv-05-2922-PHX-ROS<br><br>**ORDER** |

Pending before the Court is Defendants' Motion to Dismiss Counts/Claims: Count 4 (Doc. 154). For the reasons stated herein, Defendant's Motion shall be granted in part and denied in part.

**BACKGROUND**

Dr. George Robert Pettit is a tenured professor at Arizona State University ("ASU") in the Department of Chemistry and Biochemistry where he has taught since 1965. In 1975, he was appointed Director of the Cancer Research Institute ("CRI") at ASU. In 1986, Pettit was appointed to the Dalton Chair of Cancer Research and Medicinal Chemistry.

On April 28, 2004, Dean David Young of the ASU College of Liberal Arts and Sciences notified Plaintiff that he was being placed on administrative leave, with pay, from his position as Director of the CRI, pending an investigation of a complaint made against Pettit by ASU Assistant Professor Yung Chang. After an investigation by counsel external

1 to the Arizona Board of Regents ("ABOR"), then-Provost Milton Glick determined that Pettit
2 had violated ABOR and ASU policies. Then-Provost Glick advised Pettit that ABOR had
3 decided to non-renew – effectively terminate – his positions as Director of the CRI and
4 holder of the Dalton Chair, effective June 30, 2005.[1]

5 On September 2, 2004, pursuant to ABOR Policy No. 6-914 (the "Policy"), Pettit filed
6 an administrative whistleblower complaint, claiming that this disciplinary action was in
7 retaliation for disclosing allegedly wrongful conduct at ASU.

8 The policy states in relevant part: "No adverse personnel action may be taken against a
9 university employee in knowing retaliation for any lawful disclosure of information on a
10 matter of public concern to a public body, including a designated university officer, which
11 information the employee in good faith believes evidences: (1) a violation of any law, (2)
12 mismanagement, (3) gross waste or misappropriation of public funds, (4) a substantial and
13 specific danger to public health and safety, or (5) an abuse of authority . . . ." (Doc. 103, Ex.
14 1).

15 Pettit claimed that he disclosed allegedly wrongful conduct by Chang to Arizona Science
16 and Technology Enterprises LLC ("AzTE"), Sun Health Research Institute ("Sun Health"),
17 CRI's Associate Directors, and the Arizona Disease Control Research Commission[2]
18 ("ADCRC").[3]

19 Vice-President Paul Ward reviewed Pettit's whistleblower complaint. On February 4,
20 2005, he affirmed the August 3, 2004 disciplinary decision by then-Provost Glick.
21 Vice-President Ward found that none of the entities or individuals to which Pettit disclosed

---

[1] Pettit's status as a tenured faculty member and as a Regents Professor, as well as his benefits and compensation, have remained in effect.

[2] ADCRC was renamed the Arizona Biomedical Research Commission in 2005. 2005 Ariz. Legis. Serv. Ch. 170 (S.B. 1125) (West).

[3] Pettit has withdrawn his claim that AzTE, Sun Health, and CRI's Associate Directors are "public bodies."

- 2 -

1   Chang's purported wrongful conduct – AzTE, Sun Health, CRI's Associate Directors, or
2   ADCRC – was a public body under the Policy.
3       On February 16, 2005, Pettit requested a hearing, which was denied by Vice-President
4   Ward.  On March 11, 2005, Pettit appealed to President of ASU, Michael Crow.  By letter
5   dated March 30, 2005, President Crow affirmed the denial of a hearing.
6       In the three years since its inception, all but one of Plaintiff's claims – Count 4 of his
7   Amended Complaint – have been dismissed.  In Count 4, Pettit asserts a 42 U.S.C. § 1983
8   claim against Crow, Glick, and Ward for violating his substantive and procedural due process
9   rights by depriving .[4]  (See Doc. 1).

## ANALYSIS

### I. Standard of Review

12      The Federal Rules require only "a short and plain statement of the claim showing
13  that the pleader is entitled to relief."  Fed. R. Civ P. 8(a)(2).  "Specific facts are not
14  necessary; the statement need only give the defendant fair notice of what the claim is and
15  the grounds upon which it rests."  Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007)
16  (internal citations and quotations omitted).  Rule 12(b)(6) of the Federal Rules of Civil
17  Procedure allows a party to assert by motion that Plaintiff has "fail[ed] to state a claim
18  upon which relief can be granted."  "[F]or purposes of the motion to dismiss, (1) the
19  complaint is construed in the light most favorable to the plaintiff, (2) its allegations are
20  taken as true, and (3) all reasonable inferences that can be drawn from the pleading are
21  drawn in favor of the pleading."  Wright & Miller, Federal Practice and Procedure §1357
22  (2008).  Recent jurisprudence has implied, however, that a reasonable level of detail is

---

[4] Pettit's Section 1983 claim was filed against Crow, Ward, and Glick in their personal and official capacities.  (Doc. 1).  On August 28, 2006, this count was dismissed against Crow, Ward, and Glick in the official capacities except for the purpose of seeking declaratory or injunctive relief.  (Docs. 40, 43).  The claim against Crow, Ward, and Glick in their personal capacities remains, (Doc. 129), and is not currently before the Court.

Pettit had originally also asserted his Section 1983 claim against ABOR and ASU. (Doc. 1).  This count was dismissed on August 28, 2006.  (Docs. 40, 43).

1 required; "a plaintiff's obligation to provide the ground of his entitlement to relief
2 requires more than labels and conclusions, and a formulaic recitation of the elements of a
3 cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, ____, 127 S. Ct.
4 1955, 1964-65 (2007) (internal citations and quotations omitted).  "Implicit in this
5 passage is the notion that the rules do contemplate a statement of circumstances,
6 occurrences, and events in support of the claim being presented." Wright & Miller,
7 Federal Practice and Procedure §1215 (2008).

## II.   Milton Glick.

9       Defendants argue that "it was not clearly established that Pettit had tenure in his
10 administrative appointments as Director of CRI and Dalton Chair," and therefore that
11 Defendant Glick is entitled to qualified immunity because he "could believe that his
12 actions were legal in light of clearly established law and the information he possessed at
13 the time."  The law on qualified immunity is clear.  First, "[a] court required to rule upon
14 the qualified immunity issue must consider . . . this threshold question: [t]aken in the light
15 most favorable to the party asserting the injury, do the facts alleged show the officer's
16 conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001)
17 (quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  As an initial matter, this standard
18 is clearly met here.  Plaintiff alleges tenure in the two positions in question (Complaint ¶
19 199).  It is well-established that the holder of a tenured position has a vested property
20 interest in it, and that due process – i.e., a pre-termination hearing – is required prior to
21 deprivation of that interest. See, e.g., Bd. of Regents v. Roth, 408 U.S. 564, 576-77
22 (noting that "the Court has held that a public college professor dismissed from an office
23 held under tenure provisions and college professors and staff members dismissed during
24 the terms of their contracts have interests in continued employment that are safeguarded

- 4 -

by due process" and stating that "[w]hen protected interests are implicated, the right to some kind of prior hearing is paramount."(internal citations omitted)).[5]

Further, ABOR policies state that "[t]he status of tenure creates a legitimate claim of entitlement to continued employment unless the tenured faculty member is dismissed or released in accordance with [ABOR policies governing dismissal]." ABOR Policies 6-201(c)(19). Tenured faculty members are not to be dismissed without "just cause" and "only following an opportunity for the faculty member to utilize the conciliation/mediation and hearing procedures." ABOR Policies 6-201(j)(1)(a). It is, then, clear that tenured positions generally and tenured positions at ASU specifically are given the status of an entitlement that cannot be taken away except for cause after due process. Pettit alleges tenure in the positions in question and was not given this process. Thus, on the face of the complaint, a constitutional violation is plain.

The second stage of the inquiry must then be whether "the right was clearly established." Saucier, 533 U.S. at 200 (citing Anderson v. Creighton, 483 U.S. 635, 640). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. at 201. This means that

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

---

[5] See also Perry v. Sinderman, 408 U.S. 593 (1972) (holding that a college faculty member with de facto tenure had a property right in the position); see also Tr's. of Dartmouth College v. Woodward, 17 U.S. 518 at * 87 (1819) ("No description of private property has been regarded as more sacred than college livings. They are the estates and freeholds of a most deserving class of men; of scholars who have consented to forgo the advantages of professional and public employments, and to devote themselves to science and literature, and the instruction of youth, in the quiet retreats of academic life."); Black's Law Dictionary 1469-70 (6th ed.) (1991) (defining "tenured faculty" as "[T]hose members of a school's teaching staff who hold their positions for life or until retirement. They may not be discharged except for cause.").

Anderson, 483 U.S. at 640. Here, a reasonable official would have known that a tenured professor cannot be dismissed without cause and after following the procedures explicitly specified in the ABOR policies. The question, then, is whether a reasonable official would have known that Pettit had tenure in the directorship of CRI and the Dalton Chair.

This question does not cover new ground; Defendants' arguments that it was not apparent that Pettit had tenure in those positions are substantially similar to those the Court already ruled on in denying Defendants' Motion for Judgment on the Pleadings. In that Order, the Court addressed Defendants' contention that "Pettit could not and did not have such a mutually explicit understanding" that he had tenure in the positions of the Dalton Chair and Director of CRI. The Court ruled that, even assuming there is no possibility of tenure in an administrative position, "there is a genuine issue of material fact whether the Dalton Chair and Director of CRI were administrative appointments." First, Pettit asserts in his complaint that he has tenure, a factual allegation that is supposed to be taken as true at this stage of the litigation. Further, it found specifically that:

> [e]ven assuming that [ABOR] policies preclude a finding of a mutually explicit understanding of tenure in an administrative appointment, . . . Defendants have not established that the positions of Dalton Chair and Director of CRI were administrative positions.

A March 1986 Memorandum describing the Dalton Chair, states that "[t]he Trust [] provided that the chair arrangement be consistent with express or written ASU policy regarding permanently endowed chairs, but we do not have such a policy in place." The governing policy for administrative appointments, however, was already in place at the time the memorandum was written, implying that Pettit's appointment did not fall under the administrative appointment policy. The Court also noted that the President of the University at the time of Pettit's appointment had signed an affidavit (attached to the complaint) stating that "it was my intent at the time that Dr. Pettit's occupancy of the [Dalton] Chair would last so long as he was employed at ASU." (Complaint ¶ ¶ 177, 179).

While there are slight differences in how motions under 12(b)(6) and motions under 12(c) are to be decided, the Court's opinion issued in resolution of that earlier motion is

1  binding here.  Motion for judgment on the pleadings under Rule 12(c) is generally used to
2  "resolve the substantive merits of the controversy as disclosed on the face of the
3  pleadings."  Wright & Miller, Federal Practice & Procedure § 1367 (1999).  In the modern
4  context, it "only ha[s] utility when all material allegations of fact are admitted or not
5  controverted by the pleadings and only questions of law remain to be decided by the
6  district court."  Id.  "Judgment on the pleadings is proper when, taking all the allegations
7  in the pleadings as true and construed in the light most favorable to the nonmoving party,
8  the moving party is entitled to judgment as a matter of law."  Living Designs, Inc. v. E.I..
9  Dupont de Nemours and Co., 431 F.3d 353, 360 (9th Cir. 2005)."  A motion to dismiss is
10 decided in a similar context; factual allegations made in the complaint are accepted as true
11 for purposes of the decision.
12      This Court denied Defendants' Motion for Judgment on the Pleadings precisely
13 because factual questions concerning whether or not there was a mutual understanding
14 regarding whether the Defendant had tenure in the positions in question still existed.  That
15 factual question was apparent on the face of the pleadings.  Further, Plaintiff has satisfied
16 the more demanding standard suggested by Twombly: he has supplied evidence to support
17 his claim of tenure and has demonstrated that at this stage there is a genuine issue as to
18 whether it should have been unambiguous that Plaintiff had tenure in the positions in
19 question.  Thus, it is no more appropriate to grant a Motion to Dismiss on the basis of
20 those questions than it would have been to grant a Motion for Judgment on the Pleadings.
21                    III.  Michael Crow and Paul Ward.
22      Defendants then argue that Pettit's Due Process claim fails against Ward and Crow
23 as he has failed, as a matter of law, to show that they have deprived him of a
24 Constitutionally or federally protected right.  "In Count 4," they write, "Pettit claims that
25 Crow and Ward denies him due process by refusing to give him a whistle-blower hearing."
26 However, they argue, the Court has found that Plaintiff was not entitled to such a hearing,
27 and therefore cannot show that he was entitled to a whistle-blower hearing.  Further,
28 Count 14 of the Complaint pled that the whistle-blower policy was unconstitutional; that

1  Count was dismissed by stipulation of the parties and Defendants thus argue that Pettit
2  "cannot show the policy was unconstitutional."
3        Plaintiff, however responds that "nowhere is the complaint so limited in its pleading.
4  . . . Instead, all due process claims are alleged against all three of these defendants [Ward,
5  Crow, and Glick] in their individual capacities." Count IV, indeed, states that "[t]he
6  actions described hereinabove taken by Defendants against Dr. Pettit . . . deprived Dr.
7  Pettit of his substantive and procedural due process rights." This alone, of course, is not
8  sufficient. To flesh out details, however, Plaintiff points to several paragraphs in the
9  complaint which state, about Ward and Crow (in addition to former defendants, since
10 dismissed):

> 99. From August 2002 to the present, Defendants ASU, Crow, Glick and Poste have sought to take over the CRI building in its entirety, in part, in order to remove Dr. Pettit and CRI from ASU.
>
> 114. Without providing Dr. Pettit [a chance to reply to allegations that he made defamatory statements about Dr. Chang], Defendant Young, with the assistance of Defendant Glick and Defendant Fink, as well as that of Defendant Paul Ward, ASU General Counsel, placed Dr. Pettit on administrative leave from his position as Director of the CRI . . . .
>
> 146. Dr. Pettit requested that he be allowed to conduct disposition and documentary discovery enabling him to demonstrate, inter alia, that Defendants Fink, Glick, Crow, Poste, Young, and Chang, as well as Defendant Ward, and others, were, and are, engaged in a pattern of reprisal and retribution against Dr. Pettit which constitute knowing retaliation.
>
> 155. Subsequent to the filing of his administrative whistleblower complaint on September 2, 2004, Dr. Pettit has been subjected to further harassment, intimidation, retaliatory action, and adverse personnel action by Defendants ASU, Crow, Glick, Fink, Poste, Young, and Ward . . . .
>
> 201. On August 3, 2004, Defendant Glick, in association with Defendants Young, Ward, and Poste, purported to deprive Dr. Pettit of his CRI Directorship and his occupancy of the Dalton Chair, effective June 30, 2005, without invoking the tenure revocation procedures adopted by ASU and ABOR.

25 As the only claim left before this Court is Pettit's claim that he was deprived of his
26 substantive and procedural due process rights by being deprived of the Dalton Chair and
27 Directorship of CRI, allegations that go toward Pettit's dismissed retaliation and whistle-
28

blower claims are not relevant.[6]  Thus, only ¶ 201, which states that Defendant Glick operated "in association with" Defendant Ward goes toward establishing either Defendants' involvement in a procedural or substantive due process claim.  As a result, the complaint no longer alleges any due process violations by Defendant Crow, and he must be dismissed.

Ward's status as a defendant is more complicated.  Plaintiff does allege that it was "in association" with Defendant Ward that Defendant Glick removed Plaintiff from the positions in question.  While this is lacking in specificity, little specificity in allegations is required at the pleading stage.  Plaintiff has properly alleged a due process violation through deprivation of his tenured positions and has alleged that Ward was involved in that deprivation.  Ward, then, is not entitled to qualified immunity at this stage any more than is Defendant Glick and for the same reasons; there remains an issue of fact both as to his involvement in Plaintiff's dismissal and as to whether Plaintiff had tenure in those positions and as to whether that tenure is unambiguous.

Accordingly,

**IT IS ORDERED** Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.  Defendant Crow shall be dismissed from the suit.  Count IV against Defendants Glick and Ward shall stand.

**IT IS FURTHER ORDERED** Paragraphs 223 and 224 of Count IV shall be struck.

**IT IS FURTHER ORDERED** the parties shall file an Amended Complaint in compliance with this Order.

---

[6] Count 4, ¶ ¶ 222, 223 allege that the University's whistle-blower policy is unconstitutional.  Because the Court has already ruled that Plaintiff was not entitled to a whistle-blower hearing (Doc. 139), the parties agree that this Court no longer has jurisdiction to rule on the constitutionality of the whistle-blower policy (Docs. 144, 145).  These paragraphs must thus be dismissed.

DATED this 12th day of December, 2008.

_____
Roslyn O. Silver
United States District Judge