WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| George Robert Pettit, | ) | No. CV-05-2922-PHX-ROS |
| Plaintiff, | )<br>) | **AMENDED ORDER** |
| vs. | )<br>) | |
| Arizona Board of Regents, et al., | )<br>)<br>) | |
| Defendants. | )<br>) | |
| | ) | |

This Order amends and replaces the Court's Order Granting In Part and Denying in Part Defendants' Motion to Dismiss (Doc. 209). Pending before the Court is Defendants' Motion to Dismiss Counts/Claims: Count 4 (Doc. 154). For the reasons stated herein, Defendant's Motion shall be granted in part and denied in part.

**BACKGROUND**

Dr. George Robert Pettit is a tenured professor at Arizona State University ("ASU") in the Department of Chemistry and Biochemistry where he has taught since 1965. In 1975, he was appointed Director of the Cancer Research Institute ("CRI") at ASU. In 1986, Pettit was appointed to the Dalton Chair of Cancer Research and Medicinal Chemistry.

On April 28, 2004, Dean David Young of the ASU College of Liberal Arts and Sciences notified Plaintiff that he was being placed on administrative leave, with pay, from his position as Director of the CRI, pending an investigation of a complaint made against Pettit by ASU Assistant Professor Yung Chang. After an investigation by counsel external

to the Arizona Board of Regents ("ABOR"), then-Provost Milton Glick determined that Pettit had violated ABOR and ASU policies.  Then-Provost Glick advised Pettit that ABOR had decided to non-renew – effectively terminate – his positions as Director of the CRI and holder of the Dalton Chair, effective June 30, 2005.[1]

On September 2, 2004, pursuant to ABOR Policy No. 6-914 (the "Policy"), Pettit filed an administrative whistleblower complaint, claiming that this disciplinary action was in retaliation for disclosing allegedly wrongful conduct at ASU.

The policy states in relevant part: "No adverse personnel action may be taken against a university employee in knowing retaliation for any lawful disclosure of information on a matter of public concern to a public body, including a designated university officer, which information the employee in good faith believes evidences: (1) a violation of any law, (2) mismanagement, (3) gross waste or misappropriation of public funds, (4) a substantial and specific danger to public health and safety, or (5) an abuse of authority . . . ."  (Doc. 103, Ex. 1).

Pettit claimed that he disclosed allegedly wrongful conduct by Chang to Arizona Science and Technology Enterprises LLC ("AzTE"), Sun Health Research Institute ("Sun Health"), CRI's Associate Directors, and the Arizona Disease Control Research Commission[2] ("ADCRC").[3]

Vice-President Paul Ward reviewed Pettit's whistleblower complaint.  On February 4, 2005, he affirmed the August 3, 2004 disciplinary decision by then-Provost Glick.  Vice-President Ward found that none of the entities or individuals to which Pettit disclosed

[1] Pettit's status as a tenured faculty member and as a Regents Professor, as well as his benefits and compensation, have remained in effect.

[2] ADCRC was renamed the Arizona Biomedical Research Commission in 2005. 2005 Ariz. Legis. Serv. Ch. 170 (S.B. 1125) (West).

[3] Pettit has withdrawn his claim that AzTE, Sun Health, and CRI's Associate Directors are "public bodies."

1   Chang's purported wrongful conduct – AzTE, Sun Health, CRI's Associate Directors, or
2   ADCRC – was a public body under the Policy.

3       On February 16, 2005, Pettit requested a hearing, which was denied by Vice-President
4   Ward.  On March 11, 2005, Pettit appealed to President of ASU, Michael Crow.  By letter
5   dated March 30, 2005, President Crow affirmed the denial of a hearing.

6       In the three years since its inception, all but one of Plaintiff's claims – Count 4 of his
7   Amended Complaint – have been dismissed.  In Count 4, Pettit asserts a 42 U.S.C. § 1983
8   claim against Crow and Glick for violating his substantive and procedural due process rights
9   by depriving .[4] (See Doc. 1).

10                                   **ANALYSIS**

11                               I. Standard of Review

12      The Federal Rules require only "a short and plain statement of the claim showing
13  that the pleader is entitled to relief."  Fed. R. Civ P. 8(a)(2).   "Specific facts are not
14  necessary; the statement need only give the defendant fair notice of what the claim is and
15  the grounds upon which it rests."  Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007)
16  (internal citations and quotations omitted).  Rule 12(b)(6) of the Federal Rules of Civil
17  Procedure allows a party to assert by motion that Plaintiff has "fail[ed] to state a claim
18  upon which relief can be granted."  "[F]or purposes of the motion to dismiss, (1) the
19  complaint is construed in the light most favorable to the plaintiff, (2) its allegations are
20  taken as true, and (3) all reasonable inferences that can be drawn from the pleading are
21  drawn in favor of the pleading."  Wright & Miller, Federal Practice and Procedure §1357
22  (2008).  Recent jurisprudence has implied, however, that a reasonable level of detail is

23

24          [4] Pettit's Section 1983 claim was filed against Crow, Ward, and Glick in their personal
25  and official capacities.  (Doc. 1).  On August 28, 2006, this count was dismissed against
    Crow, Ward, and Glick in the official capacities except for the purpose of seeking declaratory
26  or injunctive relief.  (Docs. 40, 43).  The claims against Crow, and Glick in their personal
27  capacities remains, (Doc. 129), and is not currently before the Court.
            Pettit had originally also asserted his Section 1983 claim against ABOR and ASU.
28  (Doc. 1).  This count was dismissed on August 28, 2006.  (Docs. 40, 43).

1    required; "a plaintiff's obligation to provide the ground of his entitlement to relief

2    requires more than labels and conclusions, and a formulaic recitation of the elements of a

3    cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, ____, 127 S. Ct.

4    1955, 1964-65 (2007) (internal citations and quotations omitted).  "Implicit in this

5    passage is the notion that the rules do contemplate a statement of circumstances,

6    occurrences, and events in support of the claim being presented." Wright & Miller,

7    Federal Practice and Procedure §1215 (2008).

8                              II.   Milton Glick.

9         Defendants argue that "it was not clearly established that Pettit had tenure in his

10   administrative appointments as Director of CRI and Dalton Chair," and therefore that

11   Defendant Glick is entitled to qualified immunity because he "could believe that his

12   actions were legal in light of clearly established law and the information he possessed at

13   the time."  The law on qualified immunity is clear.  First, "[a] court required to rule upon

14   the qualified immunity issue must consider . . . this threshold question: [t]aken in the light

15   most favorable to the party asserting the injury, do the facts alleged show the officer's

16   conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001)

17   (quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  As an initial matter, this standard

18   is clearly met here.  Plaintiff alleges tenure in the two positions in question (Complaint ¶

19   199).  It is well-established that the holder of a tenured position has a vested property

20   interest in it, and that due process – i.e., a pre-termination hearing – is required prior to

21   deprivation of that interest.  See, e.g., Bd. of Regents v. Roth, 408 U.S. 564, 576-77

22   (noting that "the Court has held that a public college professor dismissed from an office

23   held under tenure provisions and college professors and staff members dismissed during

24   the terms of their contracts have interests in continued employment that are safeguarded

25

26

27

28

1   by due process" and stating that "[w]hen protected interests are implicated, the right to

2   some kind of prior hearing is paramount."(internal citations omitted)).[5]

3          Further, ABOR policies state that "[t]he status of tenure creates a legitimate claim

4   of entitlement to continued employment unless the tenured faculty member is dismissed

5   or released in accordance with [ABOR policies governing dismissal]."  ABOR Policies 6-

6   201(c)(19).  Tenured faculty members are not to be dismissed without "just cause" and

7   "only following an opportunity for the faculty member to utilize the

8   conciliation/mediation and hearing procedures."  ABOR Policies 6-201(j)(1)(a).  It is,

9   then, clear that tenured positions generally and tenured positions at ASU specifically are

10  given the status of an entitlement that cannot be taken away except for cause after due

11  process.  Pettit alleges tenure in the positions in question and was not given this process.

12  Thus, on the face of the complaint, a constitutional violation is plain.

13         The second stage of the inquiry must then be whether "the right was clearly

14  established." Saucier, 533 U.S. at 200 (citing Anderson v. Creighton, 483 U.S. 635, 640).

15  This inquiry "must be undertaken in light of the specific context of the case, not as a

16  broad general proposition."  Id. at 201.  This means that

17         [t]he contours of the right must be sufficiently clear that a reasonable official
           would understand that what he is doing violates that right.  This is not to say
18         that an official action is protected by qualified immunity unless the very
           action in question has previously been held unlawful, but it is to say that in
19         the light of pre-existing law the unlawfulness must be apparent.

20

21

22         [5] See also Perry v. Sinderman, 408 U.S. 593 (1972) (holding that a college faculty
    member with de facto tenure had a property right in the position); see also Tr's. of Dartmouth
23  College v. Woodward, 17 U.S. 518 at * 87 (1819) ("No description of private property has
    been regarded as more sacred than college livings.  They are the estates and freeholds of a
24  most deserving class of men; of scholars who have consented to forgo the advantages of
    professional and public employments, and to devote themselves to science and literature, and
25  the instruction of youth, in the quiet retreats of academic life."); Black's Law Dictionary
    1469-70 (6th ed.) (1991) (defining "tenured faculty" as "[T]hose members of a school's
26  teaching staff who hold their positions for life or until retirement.  They may not be
    discharged except for cause.").
27

28

1   Anderson, 483 U.S. at 640.  Here, a reasonable official would have known that a tenured

2   professor cannot be dismissed without cause and after following the procedures explicitly

3   specified in the ABOR policies.  The question, then, is whether a reasonable official

4   would have known that Pettit had tenure in the directorship of CRI and the Dalton Chair.

5       This question does not cover new ground; Defendants' arguments that it was not

6   apparent that Pettit had tenure in those positions are substantially similar to those the

7   Court already ruled on in denying Defendants' Motion for Judgment on the Pleadings.  In

8   that Order, the Court addressed Defendants' contention that "Pettit could not and did not

9   have such a mutually explicit understanding" that he had tenure in the positions of the

10  Dalton Chair and Director of CRI.  The Court ruled that, even assuming there is no

11  possibility of tenure in an administrative position, "there is a genuine issue of material

12  fact whether the Dalton Chair and Director of CRI were administrative appointments."

13  First, Pettit asserts in his complaint that he has tenure, a factual allegation that is supposed

14  to be taken as true at this stage of the litigation.  Further, it found specifically that:

15          [e]ven assuming that [ABOR] policies preclude a finding of a mutually
            explicit understanding of tenure in an administrative appointment, . . .
16          Defendants have not established that the positions of Dalton Chair and
            Director of CRI were administrative positions.
17

18  A March 1986 Memorandum describing the Dalton Chair, states that "[t]he Trust []

19  provided that the chair arrangement be consistent with express or written ASU policy

20  regarding permanently endowed chairs, but we do not have such a policy in place."  The

21  governing policy for administrative appointments, however, was already in place at the

22  time the memorandum was written, implying that Pettit's appointment did not fall under

23  the administrative appointment policy.  The Court also noted that  the President of the

24  University at the time of Pettit's appointment had signed an affidavit (attached to the

25  complaint) stating that "it was my intent at the time that Dr. Pettit's occupancy of the

26  [Dalton] Chair would last so long as he was employed at ASU."  (Complaint ¶ ¶ 177, 179).

27      While there are slight differences in how motions under 12(b)(6) and motions under

28  12(c) are to be decided, the Court's opinion issued in resolution of that earlier motion is

1  binding here.  Motion for judgment on the pleadings under Rule 12(c) is generally used to

2  "resolve the substantive merits of the controversy as disclosed on the face of the

3  pleadings."  Wright & Miller, <u>Federal Practice & Procedure</u> § 1367 (1999).  In the modern

4  context, it "only ha[s] utility when all material allegations of fact are admitted or not

5  controverted by the pleadings and only questions of law remain to be decided by the

6  district court."  <u>Id</u>.  "Judgment on the pleadings is proper when, taking all the allegations

7  in the pleadings as true and construed in the light most favorable to the nonmoving party,

8  the moving party is entitled to judgment as a matter of law."  <u>Living Designs, Inc. v. E.I.</u>

9  <u>Dupont de Nemours and Co.</u>, 431 F.3d 353, 360 (9th Cir. 2005)."  A motion to dismiss is

10  decided in a similar context; factual allegations made in the complaint are accepted as true

11  for purposes of the decision.

12       This Court denied Defendants' Motion for Judgment on the Pleadings precisely

13  because factual questions concerning whether or not there was a mutual understanding

14  regarding whether the Defendant had tenure in the positions in question still existed.  That

15  factual question was apparent on the face of the pleadings.  Further, Plaintiff has satisfied

16  the more demanding standard suggested by <u>Twombly</u>: he has supplied evidence to support

17  his claim of tenure and has demonstrated that at this stage there is a genuine issue as to

18  whether it should have been unambiguous that Plaintiff had tenure in the positions in

19  question.  Thus, it is no more appropriate to grant a Motion to Dismiss on the basis of

20  those questions than it would have been to grant a Motion for Judgment on the Pleadings.

21                          <u>III.  Michael Crow.</u>

22       Defendants then argue that Pettit's Due Process claim fails against Crow as he has

23  failed, as a matter of law, to show that he has deprived him of a Constitutionally or

24  federally protected right.  "In Count 4," they write, "Pettit claims that Crow denies him

25  due process by refusing to give him a whistle-blower hearing."  However, they argue, the

26  Court has found that Plaintiff was not entitled to such a hearing, and therefore cannot show

27  that he was entitled to a whistle-blower hearing.  Further, Count 14 of the Complaint pled

28  that the whistle-blower policy was unconstitutional; that Count was dismissed by

stipulation of the parties and Defendants thus argue that Pettit "cannot show the policy was unconstitutional."

Plaintiff, however responds that "nowhere is the complaint so limited in its pleading. . . . Instead, all due process claims are alleged against all three of these defendants [Ward, now dismissed, Crow, and Glick] in their individual capacities." Count IV, indeed, states that "[t]he actions described hereinabove taken by Defendants against Dr. Pettit . . . deprived Dr. Pettit of his substantive and procedural due process rights." This alone, of course, is not sufficient. To flesh out details, however, Plaintiff points to several paragraphs in the complaint which state, about Crow (in addition to former defendants, since dismissed):

> 99. From August 2002 to the present, Defendants ASU, Crow, Glick and Poste have sought to take over the CRI building in its entirety, in part, in order to remove Dr. Pettit and CRI from ASU.

> 146. Dr. Pettit requested that he be allowed to conduct disposition and documentary discovery enabling him to demonstrate, inter alia, that Defendants Fink, Glick, Crow, Poste, Young, and Chang, as well as Defendant Ward, and others, were, and are, engaged in a pattern of reprisal and retribution against Dr. Pettit which constitute knowing retaliation.

> 155. Subsequent to the filing of his administrative whistleblower complaint on September 2, 2004, Dr. Pettit has been subjected to further harassment, intimidation, retaliatory action, and adverse personnel action by Defendants ASU, Crow, Glick, Fink, Poste, Young, and Ward . . . .

As the only claim left before this Court is Pettit's claim that he was deprived of his substantive and procedural due process rights by being deprived of the Dalton Chair and Directorship of CRI, allegations that go toward Pettit's dismissed retaliation and whistle-blower claims are not relevant.[6] As a result, the complaint no longer alleges any due process violations by Defendant Crow, and he must be dismissed.

---

[6] Count 4, ¶ ¶ 222, 223 allege that the University's whistle-blower policy is unconstitutional. Because the Court has already ruled that Plaintiff was not entitled to a whistle-blower hearing (Doc. 139), the parties agree that this Court no longer has jurisdiction to rule on the constitutionality of the whistle-blower policy (Docs. 144, 145). These paragraphs must thus be dismissed.

1

2      Accordingly,

3      **IT IS ORDERED** Defendants' Motion to Dismiss is **GRANTED IN PART** and

4  **DENIED IN PART**.  Defendant Crow shall be dismissed from the suit.  Count IV against

5  Defendant Glick.

6      **IT IS FURTHER ORDERED** Paragraphs 223 and 224 of Count IV shall be struck.

7      **IT IS FURTHER ORDERED** the parties shall file an Amended Complaint in

8  compliance with this Order.

9

10

11

       DATED this 15th day of December, 2008.

12

13

14

15  _____

16              Roslyn O. Silver
       United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28