WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| George Robert Pettit, | No. cv-05-2922-PHX-ROS |
| Plaintiff, | **ORDER** |
| vs. | |
| Arizona Board of Regents, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion for Summary Judgment (Doc. 197). For the reasons stated herein, Defendants' Motion shall be denied.

**BACKGROUND**

Dr. George Robert Pettit is a tenured professor at Arizona State University ("ASU") in the Department of Chemistry and Biochemistry where he has taught since 1965. In 1975, he was appointed Director of the Cancer Research Institute ("CRI") at ASU. In 1986, Pettit was appointed to the Dalton Chair of Cancer Research and Medicinal Chemistry.

On April 28, 2004, Dean David Young of the ASU College of Liberal Arts and Sciences notified Plaintiff that he was being placed on administrative leave, with pay, from his position as Director of the CRI, pending an investigation of a complaint made against Pettit by ASU Assistant Professor Yung Chang. After an investigation by counsel external to the Arizona Board of Regents ("ABOR"), then-Provost Milton Glick determined that Pettit had violated ABOR and ASU policies. Then-Provost Glick advised Pettit that ABOR had

decided to non-renew – effectively terminate – his positions as Director of the CRI and holder of the Dalton Chair, effective June 30, 2005.[1]

On September 2, 2004, pursuant to ABOR Policy No. 6-914 (the "Policy"), Pettit filed an administrative whistleblower complaint, claiming that this disciplinary action was in retaliation for disclosing allegedly wrongful conduct at ASU.

The policy states in relevant part: "No adverse personnel action may be taken against a university employee in knowing retaliation for any lawful disclosure of information on a matter of public concern to a public body, including a designated university officer, which information the employee in good faith believes evidences: (1) a violation of any law, (2) mismanagement, (3) gross waste or misappropriation of public funds, (4) a substantial and specific danger to public health and safety, or (5) an abuse of authority . . . ." (Doc. 103, Ex. 1).

Pettit claimed that he disclosed allegedly wrongful conduct by Chang to Arizona Science and Technology Enterprises LLC ("AzTE"), Sun Health Research Institute ("Sun Health"), CRI's Associate Directors, and the Arizona Disease Control Research Commission[2] ("ADCRC").[3]

Vice-President Paul Ward reviewed Pettit's whistleblower complaint. On February 4, 2005, he affirmed the August 3, 2004 disciplinary decision by then-Provost Glick. Vice-President Ward found that none of the entities or individuals to which Pettit disclosed Chang's purported wrongful conduct – AzTE, Sun Health, CRI's Associate Directors, or ADCRC – was a public body under the Policy.

---

[1] Pettit's status as a tenured faculty member and as a Regents Professor, as well as his benefits and compensation, have remained in effect.

[2] ADCRC was renamed the Arizona Biomedical Research Commission in 2005. 2005 Ariz. Legis. Serv. Ch. 170 (S.B. 1125) (West).

[3] Pettit has withdrawn his claim that AzTE, Sun Health, and CRI's Associate Directors are "public bodies."

On February 16, 2005, Pettit requested a hearing, which was denied by Vice-President Ward. On March 11, 2005, Pettit appealed to President of ASU, Michael Crow. By letter dated March 30, 2005, President Crow affirmed the denial of a hearing.

In the three years since its inception, all but one of Plaintiff's claims – Count 4 of his Amended Complaint – have been dismissed. In Count 4, Pettit asserts a 42 U.S.C. § 1983 claim against Crow, Glick, and Ward for violating his substantive and procedural due process rights by depriving .[4] (See Doc. 1).

## STANDARD OF REVIEW

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In addition, the dispute must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Furthermore, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party; "[i]f the evidence is merely

---

[4] Pettit's Section 1983 claim was filed against Crow, Ward, and Glick in their personal and official capacities. (Doc. 1). On August 28, 2006, this count was dismissed against Crow, Ward, and Glick in the official capacities except for the purpose of seeking declaratory or injunctive relief. (Docs. 40, 43). The claim against Crow, Ward, and Glick in their personal capacities remains, (Doc. 129), and is not currently before the Court.

Pettit had originally also asserted his Section 1983 claim against ABOR and ASU. (Doc. 1). This count was dismissed on August 28, 2006. (Docs. 40, 43).

colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50 (citations omitted). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." <u>Id.</u> at 255. Therefore, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. <u>Id.</u>

## ANALYSIS

There is a genuine issue of material fact as to whether Plaintiff had tenure in the positions of the Dalton Chair and as Director of CRI, as suggested by this Court's rulings on both the earlier decided Motion for Judgment on the Pleadings (Doc.147) and Motion to Dismiss (Doc. 209). In those Orders, the Court addressed Defendants' contention that "Pettit could not and did not have such a mutually explicit understanding" that he had tenure in the positions of the Dalton Chair and Director of CRI. The Court ruled that, even assuming there is no possibility of tenure in an administrative position, "there is a genuine issue of material fact whether the Dalton Chair and Director of CRI were administrative appointments." First, Pettit asserts in his complaint that he has tenure, a factual allegation that is supposed to be taken as true at this stage of the litigation. Further, it found specifically that:

> [e]ven assuming that [ABOR] policies preclude a finding of a mutually explicit understanding of tenure in an administrative appointment, . . . Defendants have not established that the positions of Dalton Chair and Director of CRI were administrative positions.

A March 1986 Memorandum describing the Dalton Chair, states that "[t]he Trust [] provided that the chair arrangement be consistent with express or written ASU policy regarding permanently endowed chairs, but we do not have such a policy in place." The governing policy for administrative appointments, however, was already in place at the time the memorandum was written, implying that Pettit's appointment did not fall under the administrative appointment policy. The Court also noted that the President of the University at the time of Pettit's appointment had signed an affidavit (attached to the complaint) stating

- 4 -

that "it was my intent at the time that Dr. Pettit's occupancy of the [Dalton] Chair would last so long as he was employed at ASU."  (Complaint ¶¶ 177, 179).

Defendants argue that Arizona law precludes the possibility of tenure except where university rules and procedures are specifically followed; i.e., that "[t]here is 'no automatic right to tenure' or 'tenure by default' in Arizona's university system.  See Smith v. Univ. of Ariz., 672 P.2d 187, 188 (Ariz. App. 1983)."  However, Defendants' cited quotations come in the context of a professor being denied tenure altogether; Defendants have not cited to law or policy that addresses the situation in which an already tenured professor is awarded additional honors and positions, including an academic chair and directorship of an institute. Here, the additional appointments did not conform to the typical pattern of "administrative" appointments as defined by the university (e.g., not being renewable for a term of a year). Further, the appointment of Petit to the Dalton Chair was the first appointment of its kind at ASU.  These all contribute to the Court's finding that a genuine issue of material fact remains even if in the absence of such circumstances a court might otherwise be reluctant – or, indeed, find it impossible – to construe tenure in the absence of explicit written agreements to that effect.

There is, in Arizona, a presumption that employment is at will. Greenawalt v. Sun City W. Fire Dist., 95 F. Supp. 2d 1062, 1067 (D. Ariz. 2000) (quoting Duncan St. Joseph's Hosp. and Med. Ctr., 903 P.2d 1107, 1115 (Ariz. App. 1995)).  However, it is not irreubtable.  In Greenawalt, the court noted that in the case at hand "there [were] no conflicting or ambiguous documents or employer's conduct to consider and, therefore, there [was] no question for a jury to decide." Id. at 1068.  The present situation is quite different.  There is testimony that the positions were intended, at their inception, to last concurrently with Plaintiff's employment by the university.  The additional appointments did not conform to the typical pattern of "administrative" appointments as defined by the university (e.g., not being renewable for a term of a year).  Further, the appointment of Petit to the Dalton Chair was the first appointment of its kind at ASU.  These all contribute to the Court's finding that a genuine issue of material fact remains even if in the absence of such circumstances a court might

otherwise be reluctant – or, indeed, find it impossible – to construe tenure in the absence of explicit written agreements to that effect.

Nor do Arizona cases rule out the possibility that equitable estoppel can be established in the absence of a written agreement, though courts have acknowledge that "[i]t is rare that satisfactory evidence of an absolute, unequivocal, and formal state action will be found unless it is in writing." Open Primary Elections Now v. Bayless, 969 P.2d 649, 652 (Ariz. 1998) (quoting Valencia Energy Co. v. Ariz. Dep't of Revenue, 959 P.2d 1256, 1268 (Ariz. 1998). An Arizona appeals court rephrased this to state that "[i]n the absence of a formalized written promise, there can be no basis for estoppel." Long v. City of Glendale, 93 P.3d 519, 531 (Ariz. App. 2004).  However,  Arizona case law does not support that as an absolute proposition applicable in each employment circumstance.  Further, given the *absence* of ABOR policies around appointments like Petit's and the ambiguity of their status, it can not be concluded as a matter of law that President Nelson "did not have any authority to grant Pettit permanent employment outside the strictures of ABOR rules," as Defendants' argue. Similarly, there is a genuine issue of material fact regarding the reasonableness of Pettit's reliance in such a promise, if made, given that it is by no means clear the positions in question were administrative.

The Court agrees with Defendants, however, that Pettit does not have a properly pled First Amendment retaliation claim, should he attempt to pursue one at this late date.

Accordingly,

**IT IS ORDERED** Defendant's Motion for Summary Judgment is **DENIED.**

**IT IS FURTHER ORDERED** a Joint Proposed Pretrial Order shall be filed no later than 5:00 P.M. January 30, 2009.

1
2
3   DATED this 9th day of January, 2009.
4
5
6                              _____
                                   Roslyn O. Silver
                               United States District Judge
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 7 -